23 N.J. Super. 304 (1952)
93 A.2d 27
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BERNAYS JOHNSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 24, 1952.
Decided December 3, 1952.
*305 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Charles V. Webb, Jr., argued the cause for the plaintiff-respondent (Mr. Edward Gaulkin, attorney).
Mr. Michael Breitkopf argued the cause for the defendant-appellant.
PER CURIAM.
The defendant Bernays Johnson was convicted of operating a motor vehicle while under the influence of intoxicating liquor, in violation of R.S. 39:4-50, as amended, by the West Orange Municipal Court and, on appeal, in a trial de novo, he was found guilty by the Essex County Court. He appeals from the latter judgment.
The defendant contends that "it is incumbent upon the prosecution to prove not only that the defendant was drunk and unfit to operate a motor vehicle, but also as an essential of the State's case, to prove that the defendant did actually operate the motor vehicle"; and that the State's evidence did not sustain the conviction. The record discloses that there is no support for the position taken here by the defendant.
In the first place, with respect to defendant's intoxication, his story is that he left home about 3:00 P.M. on December 17, 1951; that shortly thereafter, near his home, he acceded to a request from an unknown soldier for a ride; that when he arrived at a point somewhere in Cedar Grove he stopped for a red light, when he was struck a blow in the back of the head and neck, causing a stinging sensation and he slumped underneath the dashboard; that from then on he had no recollection of anything that happened to him until 10:30 o'clock the same night when he found himself in the custody of the West Orange police in a battered and dazed condition.
*306 For the State, Mrs. Lydia Mildred Lindquist testified that she resided at 50 Ridgehurst Road, West Orange; that at about 5:40 P.M. of December 17, 1951 her attention was attracted to a crash outside her home. She went out the front door and saw a man lying in the road, near a car that was almost in front of her home, through a wooden fence, her house being on a hill  a dead-end street. The car was facing up the hill  quite an upgrade  and had gone partially through the dead-end where there was some shrubbery. The man was lying right alongside the car on the driver's side and that door was open. "He couldn't lie on the passenger's side because there was a tree. The other door hit a tree." She called West Orange police headquarters for an ambulance, and also called a neighbor, a Mr. Matthew, from across the street. She and Mr. Matthew took the man (defendant) into her home. He was leaning partially on her and partially on Mr. Matthew when they helped him into her home and she smelled alcohol on his breath. For a time, the defendant was very quiet in her home, then he became very abusive and called her all sorts of names, when a neighbor came into her house and mentioned the word "police." The defendant remained sitting in the room, then he tried to get up but staggered and fell back, and appeared drunk to Mrs. Lindquist. There was corroborative proof of defendant's intoxicated condition by police officers Sergeant George Masson, John F. Burns, Jr. and Lieutenant Henry W. Closs, all of the West Orange police department. Dr. Edward J. Fischer, testifying for the State, as the result of his interrogation and examination of the defendant, pronounced him under the influence of intoxicating liquor and unfit to operate a motor vehicle. Aside from defendant's own testimony, he produced Dr. Max Novick, an expert in orthopedics and neurology, who testified in response to a hypothetical question that such a blow, coupled with alleged injuries from a previous injury to the head, would probably bring about a state of amnesia. However, on cross-examination, Dr. Novick testified:
*307 "By the Court:
Now, Doctor, assuming that the blow which was struck caused a complete lack of memory from that time, approximately 3:30 or 3:45 p.m. to 10:30 that night, would it also be reasonably probable during this complete loss of memory during that time that the defendant would give answers to all questions asked of him concerning questions as to whether he drove the car, and questions of a similar nature, and also during that course of time to three or four different police officers he became boisterous and profane, would that also be a reasonable probability as a result of the blow?
A. No."
It is significant, it seems to us, that the defendant did not include in his original appendix any testimony of his witnesses, not even that of Dr. Novick. In a supplemental appendix the only defense testimony printed was a rather brief excerpt of the defendant's testimony, limited almost altogether to his story about his soldier passenger.
Secondly, the defendant contends that he was in such a drunken condition, as proved by the State, he could not be held accountable for his admission that he had been driving the automobile. The State's witnesses, Sergeant Masson and Lieutenant Closs, testified that the defendant orally admitted the operation of the automobile on two separate occasions: (1) to Sergeant Masson at the scene, and (2) to Lieutenant Closs at police headquarters. He also admitted to Lieutenant Closs that there were no occupants in the car.
In the case of State v. Baumgartner, 21 N.J. Super. 348 (App. Div. 1952), we recently considered the question as to the quantum of proof necessary to establish the guilt of an accused as the operator of a motor vehicle, and stated therein:
"* * * It is true that no one actually saw defendant driving his truck, but the evidence amply supports the conclusion that he actually did so. From the undisputed facts in the case the inference is inescapable that defendant operated his truck while under the influence of intoxicating liquor. The State sustained its burden of proof as to the truth of the charge. * * *" *308 There was plenary evidence to establish defendant as the operator of his motor vehicle while under the influence of intoxicating liquor.
We find no merit in defendant's contention that his admission of operation of his car proceeded from an irresponsible condition of mind and, therefore, renders such alleged admission incompetent to prove that he actually did operate the said motor vehicle. The most that can be said for defendant's argument is that, at best, his drunken condition merely raised a question as to the weight to be given to the admissions. As stated in 2 Wigmore on Evidence (3d ed.), sec. 499, p. 593
"A confession must be judged with reference to the time of its utterance; the mere fact of intoxication at the time does not of itself exclude the confession; * * *"
Also, in 22 C.J.S., Criminal Law, sec. 730, at p. 1247, it is stated:
"* * * Declarations or admissions of accused are not rendered inadmissible by the fact that he was drunk when he made them, but such fact may be taken into consideration in determining their weight."
We may add that the proofs indicate that when questioned by the police officers, he made intelligible statements. For instance, when he learned that the officer was going to take him to police headquarters, he asked that he be taken to a doctor friend at the Presbyterian Hospital where everything would be straightened out. On cross-examination, he stated that the medical friend in question was a Dr. Royal Scharf.
We are satisfied that the Essex County Court, as the trier of the facts, did not commit any harmful error and that its judgment of conviction is fully sustained by the evidence. State v. Baumgartner, supra.
Affirmed.